```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 LASE GUARANTY TRUST, derivatively on
 behalf of JPMORGAN CHASE & CO.,
                                                MEMORANDUM & ORDER
                    Plaintiff,                  22-CV-01331(EK)(JAM)


                -against-


 LINDA B. BAMMANN, STEPHEN B. BURKE,
 TODD ANTHONY COMBS, JAMES SCHINE
 CROWN, JAMES DIMON, et al.,

                    Defendants.

         -and-

 JPMORGAN CHASE & CO.,

         Nominal Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

Federal regulations require securities and commodities dealers to preserve their employees' business-related communications for inspection.  In December of 2021, three JPMorgan Chase subsidiaries admitted that their employees, including some in management, were conducting firm business in unapproved communications channels — via personal email accounts, text message, and WhatsApp — and that these communications were not preserved.  JPM settled books-and-records charges with the Securities and Exchange Commission and

the Commodity Futures Trading Commission for a total of $200 million in civil penalties.

Lase Guaranty Trust, a JPM shareholder, initiated this derivative action against certain JPM board members.  Lase alleges that the board members materially misled shareholders while seeking reelection, in violation of Section 14(a) of the Securities Exchange Act.  The misleading statements and omissions are alleged to have been made in the company's 2021 proxy statement.  At bottom, Lase complains that the proxy statement made several optimistic assertions about the robustness of JPM's compliance environment, while simultaneously omitting to disclose the widespread use of unapproved communications channels.  In addition to the Section 14(a) claim, Lase brought state-law claims alleging, among other things, that the directors breached their fiduciary duties.

The defendants have now moved to dismiss all claims.  The motion is based on two primary grounds: first, that Lase failed to comply with the requirement that, prior to filing a derivative action, the plaintiff first demand that the board of directors initiate the case.  Second, the defendants move to dismiss all causes of action for failure to state a claim.

For the reasons that follow, the Section 14(a) claim is dismissed.  Having dismissed the only federal claim, the

court declines to entertain supplemental jurisdiction over the state-law claims.

## I. Background

The following recitation is taken from Lase's Amended Verified Stockholder Derivative Complaint ("Am. Compl."), ECF No. 16, and certain materials discussed extensively therein: the SEC and CFTC orders and JPM's 2021 proxy statement.[1]

JPM consented to the entry of orders imposing sanctions with the SEC and the CFTC in December of 2021. *See* Am. Compl. ¶ 5. In doing so, the bank admitted that the recordkeeping violations were "firm-wide," "involved employees at all levels of authority," and were "not hidden within the firm." *See* MTD Ex. B at 4, ECF No. 23-2. The orders spoke to the bank's mental state: JPM admitted that the violations were "willful[]." MTD Ex. A at 6, ECF No. 6. Moreover, "managing directors and senior supervisors responsible for implementing JPM's policies and procedures, and for overseeing employees' compliance with those policies and procedures, themselves failed

---

[1] On a motion to dismiss, the court may consider a document outside the complaint where the complaint "relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). The court may also take judicial notice of documents in the public record, including SEC filings and orders of administrative agencies, "to establish the fact of such . . . filings." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 355 n.5 (2d Cir. 2010).

Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

to comply." MTD Ex. B at 4. JPM acknowledged that these violations had been ongoing for years. *See* MTD Ex. A at 2.

Months before these settlements, JPM's board of directors sought shareholder approval for the directors' reelection and their compensation package. *See* Am. Compl. ¶ 102; *see also* 2021 JPM Proxy Statement ("Proxy") 1, 87, ECF No. 32-3.[2] The proxy statement asserted that JPM had strong risk controls and that JPM makes risk management a priority. *See* Am. Compl. ¶¶ 103-04, 106-08, 110-17. The proxy statement also described JPM's governance practices as "strong," and "sound." *See* Am. Compl. ¶¶ 115-16; Proxy 13, 30. It represented that JPM expects "all employee conduct [to] adhere to the highest ethical standards." *See* Am. Compl. ¶ 103; Proxy 64. It likewise represented that the directors "possess the skills, experience, personal attributes and tenure" needed to "oversee the Firm's risk management." *See* Am. Compl. ¶ 105; Proxy 20. And it stated that JPM has strong clawback provisions "designed to hold executives accountable, when appropriate." *See* Am. Compl. ¶ 109; Proxy 58-59.

Lase asserts that these statements — and the concurrent omission to disclose the recordkeeping violations — were materially misleading, in violation of Section 14(a) of the

---

[2] Page numbers in citations to the 2021 proxy statement refer to ECF pagination.

4

Exchange Act. *See id.* ¶¶ 255-60. That provision prohibits registrants from soliciting proxy statements in a manner that violates SEC regulations — including Rule 14a-9, which forbids material misstatements and omissions in proxies. Lase also asserts Delaware law claims for breach of fiduciary duties and waste of corporate assets (JPM is incorporated in Delaware). *See id.* ¶¶ 261-70.

The defendants moved to dismiss. *See* Defs.' Mem. of L. Supp. Mot. to Dismiss ("Defs.' Mem.") 1-2, ECF No. 22. With the court's authorization, the parties initially briefed only the Fed R. Civ. P. 23.1 issue regarding failure to demand that JPM's board of directors initiate this action. Sept. 21, 2022 Order.

Following oral argument on the Rule 23.1 issue, the court sought supplemental briefing on the Section 14(a) claim, including whether it should be dismissed for failure to state a claim under Rule 12(b)(6) rather than pursuant to Rule 23.1. *See* Arg. Tr. 51:1-10, 56:11-57:2, ECF No. 29. The defendants then moved to dismiss all claims for failure to state a claim. *See* Suppl. Br. Supp. Mot. to Dismiss ("Defs.' Suppl.") 1, ECF No. 30.

## II.   Legal Standards

To overcome a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to

5

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).

Rule 23.1 outlines requirements that apply when "one or more shareholders or members of a corporation . . . bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce." Fed. R. Civ. P. 23.1(a). Among other prerequisites, a derivative complaint must "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority, and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3)(A)-(B).

The upshot is that "a shareholder seeking to assert a claim on behalf of the corporation must first exhaust intracorporate remedies by making a demand on the directors to obtain the action desired." *F5 Cap. v. Pappas*, 856 F.3d 61, 82 (2d Cir. 2017). "Although Rule 23.1 sets forth the pleading standard for federal court, the substance of the demand requirement is a function of state law — here, Delaware law."

6

*Id.* "A shareholder plaintiff who does not make a demand on the board must allege that demand is excused." *Id.* When federal courts apply Delaware law, "[d]emand futility analysis is conducted on a claim-by-claim basis." *Lambrecht v. O'Neal*, 504 F. App'x 23, 26 (2d Cir. 2012) (citing *Beam v. Stewart*, 833 A.2d 961, 977 n. 48 (Del. Ch. 2003), *aff'd*, 845 A.2d 1040 (Del. 2004)).

### III. Discussion

**A.   Failure to Make a Demand Under Rule 23.1**

The defendants seek dismissal based on Rule 23.1: Lase did not demand that JPM's board bring this suit, and such demand was not excused. *See* Defs.' Suppl. 1-2. Lase responds that it has adequately pled that demand should be excused for all claims.

Under Delaware law, demand is excused when a corporation's board cannot "impartially consider a litigation demand" — in such circumstances, demand is deemed futile. *See* Del. Ch. Ct. R. 23.1; *United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1059, 1064 (Del. 2021). This is the case when, for example, a majority of the directors who would consider the demand face a "substantial likelihood of liability" on the claim. *Id*. at 1059.

7

Lase alleges that all defendants — the directors who would have considered a demand here — face a substantial likelihood of liability on all claims. *See* Am. Compl. ¶ 125. The defendants, in turn, argue that they face no such substantial likelihood of liability on any claim, and therefore that demand was not excused. *See* Defs.' Mem. 13.

As to the Section 14(a) claim — the sole basis for federal jurisdiction — the defendants argue that they cannot be held liable to shareholders because a provision in JPM's charter exculpates them from such liability. *See* Defs.' Mem. 13-15. That provision states that "to the fullest extent" that Delaware law "permits the limitation or elimination of the liability of directors, no director of [JPM] shall be personally liable to [JPM] or its stockholders for monetary damages for breach of fiduciary duty as a director." JPM Restated Certificate of Incorporation (the "Charter") at art. 6(1), ECF No. 23-3. And Delaware law, in turn, allows charter provisions "eliminating or limiting the personal liability of a director or officer to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director" — except for, most importantly, breaches of the duty of loyalty and actions involving intentional misconduct. 8 Del. § 102(b)(7).

If directors are protected by such a charter provision, a shareholder plaintiff seeking only monetary damages

8

must plead "a non-exculpated claim for breach of fiduciary duty," or else "that director will be entitled to be dismissed from the suit" at the pleading stage. *In re Cornerstone Therapeutics Inc, S'holder Litig.*, 115 A.3d 1173, 1179 (Del. 2015); *accord KDW Restructuring & Liquidation Servs. LLC v. Greenfield*, 874 F. Supp. 2d 213, 223–24 (S.D.N.Y. 2012) (applying Delaware law). Because exculpated claims must be dismissed at the pleading stage, a defendant who is exculpated does not face a "substantial likelihood of liability," and can impartially consider a demand to bring an exculpated claim against even herself. *Zuckerberg*, 262 A.3d at 1054.

Following a preliminary reading, it remained unclear to this court whether the exculpation provision in JPM's charter squarely applies to Lase's Section 14(a) claim. Lase expressly pleaded that its Section 14(a) claim "is based solely on negligence." Am. Compl. ¶ 252. JPM's charter, however, exculpates JPM directors from liability for "monetary damages for breach of fiduciary duty as a director" — obviously a different cause of action from negligence. *See* Charter at art. 6(1). It is true that Delaware's fiduciary duty subsumes a duty of care, and that *certain* instances of negligence can be sufficiently egregious as to violate it. But not all: such a breach requires directors to act with gross negligence. *See Aronson v. Lewis*, 473 A.2d 805, 812 & n.6 (Del. 1984) (liability

9

under Delaware's business judgment rule is "predicated upon concepts of gross negligence"), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).  Thus, while a negligence action can implicate the duty of care, it may still be the case that a director can act negligently without breaching any fiduciary duty.[3]

Lase does not argue that its Section 14(a) claim is non-exculpable because it sounds in negligence short of a breach of Delaware's fiduciary duty of care.  Rather, in its supplemental brief, Lase argued that its Section 14(a) claim is premised on conduct so extreme, it violated the directors' duty of loyalty (and the subsidiary duty of good faith) — violations that are non-exculpable.  *See* Pls.' Suppl. Mem. Opp. Mot. to Dismiss ("Pls.' Suppl. Opp.") 9-10, ECF No. 31.  Lase requested leave to amend its complaint again to conform the complaint to this theory.  *See id.* at 3.  In particular, Lase proposed to omit the paragraph limiting the Section 14(a) count to

---

[3] In contemplating this point, the court posited at oral argument the case of an employee who negligently caused a motor-vehicle accident, leading to *respondeat superior* liability for his employer.  The court asked whether that employee might remain liable to the employer for contribution despite the exculpation for breaches of fiduciary duty.  *See* Arg. Tr. 5:7-25. Counsel for JPM responded that, logically speaking, an exculpation from the "greater" liability — gross negligence — must logically include exculpation from the lesser — simple negligence.  This view finds meaningful support in federal district court cases.  *See, e.g.*, *In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 20-CV-08750-MMC, 2022 WL 345066, at *5 (N.D. Cal. Feb. 4, 2022) (collecting cases applying exculpation clauses to Section 14(a) claims and observing that "there are, to the Court's knowledge, no cases holding to the contrary").  In the end, however, I leave this question for another day.

10

negligence, rather than "reckless or knowing conduct" by JPM's directors.  *See id.* (citing Am. Compl. ¶ 252).

In this case, I do not need to decide whether demand would have been futile.  The parties agree that compliance with Rule 23.1 is not something the court must address before assessing whether a plaintiff states a claim.  Compliance with Rule 23.1's demand requirement is not a matter of jurisdiction.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 252 n.57 (2d Cir. 2018).[4]

As discussed below, the plaintiffs have failed to state a claim under Section 14(a), by a relatively wide margin.  That claim is thus dismissed under Rule 12(b)(6).

**B.   Failure to State a Viable Section 14(a) Claim**

Section 14(a) outlaws the solicitation of any proxy "in contravention of such rules and regulations as the [SEC] may prescribe."  15 U.S.C. § 78n(a)(1).  SEC Rule 14a-9(a), in turn, provides that: "No solicitation subject to this regulation shall be made by means of any proxy . . . containing any statement" that "is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9(a).

---

[4] In *National Credit Union*, the Second Circuit "adhere[d] to the view" that questions of "derivative standing" should be viewed as Rule 12(b)(6) issues, not Article III issues.  *Id.*

11

"A fact is material for purposes of Rule 14a-9 if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Koppel v. 4987 Corp.*, 167 F.3d 125, 131 (2d Cir. 1999). "Once the proxy statement purports to disclose" material facts, "there is an obligation to portray them accurately." *Id.*

The Private Securities Litigation Reform Act imposes heightened pleading requirements on Section 14(a) claims. In "any private action arising under" the Exchange Act in which the plaintiff alleges a material misstatement or omission, the plaintiff must "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). The plaintiff "must do more than say that the statements . . . were false and misleading; [it] must demonstrate with specificity why and how that is so." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004). District courts in this circuit have uniformly applied these requirements to negligence-based Section 14(a) claims. *See, e.g., Lanigan Grp., Inc. v. Li-Cycle Holdings Corp.*, No. 22-CV-02222, 2023 WL 6541884, at *3 (E.D.N.Y. Oct. 6, 2023) (collecting cases).

Here, Lase has failed to plead a material misstatement or omission in the 2021 proxy statement.

1. <u>Immaterial Statements</u>

Many of the statements at issue concern JPM's risk controls — their existence, quality, and importance. *See* Am. Compl. ¶¶ 103–04, 106–08, 110–17. Representative examples in the proxy include:

- The board of directors "actively oversees" JPM's "business and affairs," employing "sound governance practices," Proxy 19, and reviews its performance against "regulatory requirements." *See id.* at 36.

- JPM's "rigorous" risk, controls & conduct review process includes an "enterprise-wide framework for management to oversee and respond to workforce conduct-related matters that may otherwise expose [JPM] to financial, reputational, compliance and other operating risks." *Id.* at 50, 59.

- Various board committees oversee issues relating to governance, internal controls, and employee conduct. *See id.* at 32–35.

- JPM is "focused on managing employee conduct end-to-end," and has "performance development and compensation processes" that are "designed to hold employees accountable for their conduct, where appropriate." *Id.* at 64.

- JPM "[c]ontinued to enhance risk, controls and conduct information provided to managers to use during performance reviews and employee conduct inquiry & investigation processes," "strengthen [the] risk and control environment," and "conduct business in a responsible way." *Id.* at 47, 61.

- JPM "strive[s] to clearly and frequently communicate our expectations that all employee conduct must adhere to the highest ethical standards . . . including through town hall meetings and senior leadership messages and by including culture and conduct related questions in our employee surveys." *Id.* at 64.

- The board sets the cultural "tone at the top." *Id.* at 19.

13

Lase alleges that these statements are false because the Board "utterly failed" to "implement and maintain effective internal controls and corporate governance" sufficient to "ensure" regulatory compliance and "monitor the material risks" to JPM. Am. Compl. ¶ 118. In support, Lase points to the recordkeeping violations. *See id.*

The Second Circuit has held similar statements to be immaterial in another Section 14(a) case involving a JPM proxy statement. *See ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 205-06 (2d Cir. 2009). In *ECA*, the plaintiffs alleged that JPM "made numerous misrepresentations regarding its 'highly disciplined' risk management and its standard-setting reputation for integrity." *Id.* at 205. The panel held that these statements were immaterial — and, thus, nonactionable — as they were "too general to cause a reasonable investor to rely upon them." *Id.* at 206. The statements "did not, and could not, amount to a guarantee that [JPM's] choices would prevent failures in its risk management practices." *Id.*

More recently, the Circuit wrote (in a substantially similar, but not identical, posture): "a plaintiff cannot (a) identify a specific back-end, price-dropping event, (b) find a front-end disclosure bearing on the same subject, and then (c) assert securities fraud, unless the front-end disclosure is

14

sufficiently detailed in the first place." *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 102 (2d Cir. 2023).[5] "[A] mismatch in specificity between the two undercuts a plaintiff's theory that investors would have expected more from the front-end disclosure." *Id.*

This case presents a paradigmatic example of that mismatch in specificity. Simply put, the "up-front" disclosures that Lase relies on are significantly more generic than the ostensibly corrective disclosures in the SEC and CFTC settlements. In addition to the statements set out above, Lase challenges, for example, the proxy's claim that JPM was "committed to strong corporate governance practices." Am. Compl. ¶ 103. But it is generally "well-established that general statements about reputation, integrity, and compliance with ethical norms are inactionable" in securities fraud cases. *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014). As in the cases described above, these kinds of statements are simply "too general to cause a reasonable investor to rely upon them." *Id.* (affirming the dismissal, on materiality grounds, of a case challenging "general statements about reputation, integrity, and compliance

---

[5] The *Arkansas Teacher* case was decided at the class certification stage — a different analysis from the question of whether materiality has been adequately pleaded, to be sure; but the court explicitly noted that "the overlap is substantial" between the two settings. *Id.*

15

with ethical norms"); *see also* IV Louis Loss, Joel Seligman, & Troy Paredes, Securities Regulation 6.C.5 (6th ed. 2020) (collecting Section 14(a) cases in which general statements were held immaterial).

2. <u>Statements That are Not Misleading</u>

Lase challenges certain additional statements in the proxy, but fails to satisfy Rule 14a-9's requirement to allege that the statements were false or misleading, let alone materially so. *See* Am. Compl. ¶¶ 105, 109.

Lase challenges the representation that the director nominees have personal qualities — "skills, experience, personal attributes and tenure" — that would allow them to "effectively oversee [JPM's] risk management and internal control framework, and management's execution of its responsibilities." Proxy 20. But Lase makes no allegations about the true personal qualities of the nominees that would demonstrate how or why this statement is misleading.

Lase also challenges the representation that JPM has strong clawback provisions "designed to hold executives accountable, when appropriate." *See* Proxy 58-59. Again, however, Lase never alleges that no such clawback provisions exist. Instead, Lase asserts that this statement is misleading because JPM did not elect to invoke the clawback provisions in this case. *See* Am. Compl. ¶ 109. But "[i]t is well established

16

that Section 14 carries with it no formal requirement that predictions be made as to future behavior, and indeed, they are discouraged." *Krauth v. Executive Telecard, Ltd.*, 890 F. Supp. 269, 288-89 (S.D.N.Y. 1995).[6]

3. Omissions

Lase also alleges liability based on certain omissions. The proxy statement, for example, claimed that JPM's directors frequently met with regulators about expectations for compliant conduct.[7] *See* Am. Compl. ¶ 76. Given this claim, the plaintiff contends, it was a material omission to fail to disclose (1) employees' widespread use of off-channel communications at JPM; and (2) the defendants' own breaches of fiduciary duty in failing to police those violations. *See id.* ¶ 255.

These are not actionable omissions. For an omission to be actionable, the securities laws must impose a duty to disclose the omitted information. *Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002). "[O]nce a company speaks on an issue or topic, there is a duty to tell the whole truth." *Meyer v.*

---

[6] The defendants, citing a *Wall Street Journal* article, assert that it is actually "publicly known that JPMorgan did claw back pay from executives as a result of conduct related to record keeping violations." Defs.' Suppl. Reply Mem. of L. Supp. Mot. to Dismiss 10 & n.10, ECF No. 33. But I need not look beyond the complaint to conclude that this statement is inactionable.

[7] Plaintiff's counsel invoked this statement before any other at oral argument, citing it as an example of why the failure to disclose off-channel communications was "materially omissive." Arg. Tr. 32:9-13.

17

*Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014). However, "the duty to disclose more is triggered only where that which is disclosed is sufficiently specific." *Ark. Tchr.*, 77 F.4th at 102. The disclosure that JPM's directors speak to regulators about their agencies' expectations falls short of the level of specificity that triggers such a duty.

Generally speaking, "companies do not have a duty to disclose uncharged, unadjudicated wrongdoing." *Pontiac*, 752 F.3d at 184. Nor must directors accuse themselves of a breach of fiduciary duty. *See Koppel*, 167 F.3d at 134. Rather, where "there is simply no misrepresentation or omission of material facts other than the omission of . . . self-accusation" of breach of fiduciary duty, then "there is no basis" for a Section 14(a) claim. *Id.*

In sum, Lase has failed to adequately plead a material misstatement or omission in the 2021 proxy statement. The Section 14(a) claim is accordingly dismissed under Rule 12(b)(6).[8]

---

[8] Lase's failure to identify a material misstatement or omission is fatal to the Section 14(a) claims. But even if Lase had identified a material misstatement or omission, to state a 14(a) claim, Lase would need to sufficiently plead "both transaction causation, i.e., that but for the fraudulent statement or omission, the plaintiff would not have entered into the transaction; and loss causation, i.e., that the subject of the fraudulent statement or omission was the cause of the actual loss suffered." *Suez Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001); *see also Grace v. Rosenstock*, 228 F.3d 40, 47 (2d Cir. 2000). The Second Circuit has recently rejected Section 14(a) claims premised on "defective" director elections for want of loss causation. *See Rubenstein ex rel*

18

**C.   Delaware Law Claims**

As there are no federal claims remaining, I decline the defendants' invitation to exercise supplemental jurisdiction over the state-law claims.  *See* Defs.' Supp. Mem. 10.  This is the "usual" outcome when all federal claims are dismissed at the pleading stage.  *See Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013).  No special reason emerges to justify a deviation from that practice here.

### IV.   Conclusion

The complaint is dismissed without prejudice.  Lase may file a motion seeking leave to file an amended complaint within thirty days.  Any such motion should include the proposed amended complaint as an exhibit in accordance with this court's individual rules and practices.  If Lase does not seek leave to

---

*Jefferies Fin. Grp. Inc. v. Adamany*, No. 22-2794, 2023 WL 6119810, at *4 (2d Cir. Sept. 19, 2023).  The *Rubenstein* panel reasoned that the plaintiff had, among other things, failed to allege that, absent the purported material omission he identified in the proxy, "the directors would not have been re-elected."  *Id.*  I need not decide the issue here.

amend within thirty days, judgment shall enter, and the case shall be closed.

SO ORDERED.

      /s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:    March 14, 2024
           Brooklyn, New York